UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: ) | |
| ) | Case No.: 1:21-bk-14815-LMI |
| Violeta Marina Nunez, ) | |
| ) | Chapter 13 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| Violeta Marina Nunez, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Adv. Pro. No.: 1:21-ap-01157-LMI |
| v. ) | |
| ) | |
| Wilmington Savings Fund Society, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

**DEFENDANT WILMINGTON'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

Defendant, Wilmington Savings Fund Society dba Christiana Trust, not individually, but solely as Trustee for NYMT Loan Trust I ("**Wilmington**"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), as incorporated by Federal Rule of Bankruptcy Procedure 7012, herby moves to dismiss Plaintiff Violeta Marina Nunez's ("**Plaintiff**") *Amended Complaint to Avoid a Preference Pursuant to 11 U.S.C. § 547(b) and Other Related Relief* [Doc. No. 9] (the "**Amended Complaint**" or "**Am. Compl.**"), and in support thereof respectfully states as follows:

I.      **RELEVANT BACKGROUND.**

1.      On April 21, 2005, Plaintiff took out a loan (the "**Loan**") to purchase real property located at 14920 SW 82nd Lane, Miami, Florida, 33193-3112 (the "**Property**"). *See* Am. Compl. ¶¶ 8-10.

2.      Plaintiff defaulted under the Loan, and on August 25, 2020, Wilmington filed a complaint to foreclose the mortgage encumbering the Property in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "**State Court**"), initiating case number 2020-017983-CA-01 (the "**Foreclosure Action**"). *See* Am. Compl. ¶ 9. A true and correct copy of the Foreclosure Action docket is attached hereto as Exhibit A.[1]

3.      On January 27, 2021, the State Court entered a final judgment of foreclosure against Plaintiff in the amount of $150,164.85 (the "**Final Judgment**"). *See* Am. Compl. ¶ 10; Ex. A.

4.      The Property was sold pursuant to the Final Judgment on April 13, 2021 (the "**Foreclosure Sale**"). *See* Am. Compl. ¶ 11; Ex. A. Wilmington was the successful bidder at the Foreclosure Sale with a credit bid of $69,100.00. *See* Am. Compl. at Exhibit 1; Ex. A.

5.      On April 27, 2021, a certificate of sale was filed in the Foreclosure Action. *See id*.

6.      On May 4, 2021, Plaintiff filed an objection to the Foreclosure Sale. *See* Ex. A. After a hearing on May 18, 2021, the State Court entered an order on May 20, 2021, denying Plaintiff's objection and ordering the clerk to issue a certificate of title. *See* Ex. A.

---

[1] Wilmington requests that this Court take judicial notice of the complete docket and documents filed in the Foreclosure Action, which may be considered at the motion to dismiss stage. *See Ebeh v. St. Paul Travelers*, 2010 WL 5553687, at *3 (M.D. Fla. Oct. 6, 2010) ("On the matter of judicial notice, Fed. R. Evid. 201(f) provides that judicial notice of adjudicative facts may be taken at any stage in a proceeding…. A district court may take judicial notice of certain facts without converting a motion to dismiss into a summary judgment motion…." and finding that the court could take judicial notice of state court pleadings at the motion to dismiss stage (internal citations omitted)); *Ferrari v. County of Suffolk*, 790 F. Supp. 2d, 34, 47 n.4 ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*"); *AAMP of Florida, Inc. v. Automotive Data Solutions, Inc.*, 2014 WL 12620847, at *6 (M.D. Fla. Aug. 26, 2014).

7. Also on May 18, 2021, Plaintiff filed a petition for relief under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, initiating bankruptcy case number 1:21-bk-14815-LMI (the "**Bankruptcy Case**"). *See* Ex. A; Bankruptcy Case Doc. No. 1.

8. On May 19, 2021, Plaintiff filed her *Complaint to Avoid a Preference Pursuant to 11 U.S.C. § 547(b) and Other Related Relief* (the "**Original Complaint**"), initiating adversary proceeding number 1:21-ap-01157-LMI (the "**Adversary Proceeding**"). *See* Adversary Proceeding Doc. No. 1.

9. Thereafter, on June 25, 2021, Plaintiff filed the Amended Complaint. *See* Adversary Proceeding Doc. No. 9. In the Amended Complaint, Plaintiff asserts that the Foreclosure Sale should be vacated as a preferential transfer under section 547 of the Bankruptcy Code. *See* Am. Compl. ¶¶ 15-18.

10. The Amended Complaint fails to state a claim upon which relief may be granted because (i) Wilmington did not receive more from the Foreclosure Sale than it would have received in a chapter 7 liquidation; (ii) the interest transferred to Wilmington at the Foreclosure Sale was not on account of an antecedent debt; and (iii) Plaintiff does not have standing to bring this action. Accordingly, for these reasons and the reasons set forth more fully herein, this Court should dismiss Plaintiff's Amended Complaint with prejudice.

**II.    LEGAL STANDARD.**

11. Wilmington brings this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as incorporated by Federal Rule of Bankruptcy Procedure 7012, based upon Plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a legally sufficient claim, "a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Wilchombe v. Tee Vee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) (citing *Twombly*, 550 U.S. at 555). A court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. ARGUMENT.

**A. Plaintiff's Claim Fails as a Matter of Law because the Transfer Arising from the Foreclosure Sale Did Not Result in Wilmington Receiving More Value Than It Would Otherwise Have Received in a Chapter 7 Liquidation as the Value of Property at the Time of a Foreclosure Sale is Presumed to be the Foreclosure Sale Price.**

12. In the Amended Complaint, Plaintiff asserts that the Foreclosure Sale should be avoided and vacated under section 547 because Wilmington purportedly received more value as the winning bidder at the Foreclosure Sale than it would have otherwise received under a chapter 7 liquidation of the Debtor's assets. *See* Am. Compl. ¶¶ 15, 16. In support thereof, Plaintiff incorrectly alleges that the Property was worth $192,000.00 at the time of the Foreclosure Sale when Wilmington received it. *See* Am. Compl. ¶ 12. Plaintiff further asserts that, among other reasons, because Wilmington was purportedly owed only $150,164.84 but received the

4

purportedly $192,000.00-valued Property, the Foreclosure Sale constitutes a preferential transfer. *See* Am. Compl. ¶¶ 10, 12, 17.

13.     To avoid the Foreclosure Sale as a preferential transfer, Plaintiff must show that Wilmington received more from the Foreclosure Sale than it otherwise would have in a chapter 7 liquidation. *See* 11 U.S.C. § 547(b)(5). The Supreme Court of the United States has held that "the reasonably equivalent value[] a for foreclosed property[] is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 545 (1994) (considering the avoidance of a foreclosure sale as a fraudulent transfer under section 548 and finding that the "fair market value" and "reasonable forced-sale price" are not proper valuations of a property sold at foreclosure). Although the Supreme Court's ruling in *BFP* involved section 548, its holding has been applied to cases involving avoidable preferences under section 547. *See e.g.*, *In re Veltre*, 562 B.R. 890, 893-94 (Bankr. W.D. Pa. 2017), *aff'd*, 2017 WL 3481077 (W.D. Pa. Aug. 14, 2017), *aff'd*, 732 F. App'x 171 (3d Cir. 2018) (holding that "[u]nder the Supreme Court's holding in *BFP* … if applicable state foreclosure requirements are met, the price obtained at the foreclosure sale constitutes reasonably equivalent value as a matter of law"); *In re Pulcini*, 261 B.R. 836, 844 (Bankr. W.D. Pa. 2001) (holding that although *BFP* dealt with section 548, its rationale applies to preference actions with "equal force"); *In re FIBSA Forwarding, Inc.*, 230 B.R. 334, 341 (Bankr. S.D. Tex.), *aff'd*, 244 B.R. 94 (S.D. Tex. 1999) (finding that the court was "bound" by *BFP* and holding that a foreclosure sale cannot be avoided as a preferential transfer because it would create the same problems that *BFP* attempted to prevent); *In re Cottrell*, 213 B.R. 378, 383 (Bankr. M.D. Ala. 1996) (holding that *BFP* "is equally applicable to both kinds of avoiding powers," fraudulent conveyances under section 548 and preferential transfers under section 547).

14. Particularly persuasive is *In re Cottrell*, in which a chapter 13 debtor sought to avoid a prepetition foreclosure sale as a preference. *See In re Cottrell*, 213 B.R. 378 at 380. Adhering to *BFP*, the *Cottrell* Court held that the value of the transferred property was the foreclosure sale price, reasoning that the foreclosure sale's "forced sale price … would undoubtedly be duplicated by a trustee in a forced sale in bankruptcy," and holding that "[t]he amount received at the foreclosure sale [was] the reasonably equivalent value of the residence." *Id.* at 383 (internal quotations omitted).

Here, as in *Cottrell*, although the Property may have had a fair market value greater than the $69,100 price Wilmington paid at the Foreclosure Sale, the liquidation sale price for which a chapter 7 trustee would have sold the Property would be the same as the price at foreclosure. As such, Wilmington received the same value when it purchased the Property at the Foreclosure Sale as it would have received if the Property were sold at a liquidation sale. Further, as with the *Cottrell* Court, this Court should follow the Supreme Court's guidance in *BFP* and find that the value of the Property at the time of the Foreclosure Sale was Wilmington's purchase price. Accordingly, Wilmington received a prepetition transfer of only $69,100.00 [*see* Am. Compl. at Exhibit 1], rather than a transfer of $192,000.00, and the $69,100.00 Wilmington received was the reasonably equivalent value of the Property. As such, Wilmington did not receive more at the Foreclosure Sale than it otherwise would have in a chapter 7 liquidation, and Plaintiff's claim consequently fails as a matter of law. This Court should thus dismiss the Amended Complaint with prejudice.

15. Moreover, even if the Property had been subsequently resold by Wilmington for more than $69,100.00 after the Foreclosure Sale (which it has not), Wilmington still did not receive more than it would have in a chapter 7 liquidation. The fact that a creditor sells property that it

purchased at a prepetition foreclosure sale for a profit does not make the foreclosure sale an avoidable preference. *See In re Ehring*, 900 F.2d 184, 188-89 (9th Cir. 1990).

16. Particularly on point is the Ninth Circuit's *In re Ehring* in which a creditor purchased the debtor's house for $199,746.41 at a trustee's sale (nonjudicial foreclosure) and shortly thereafter sold the property to a third party for $390,000. *See In re Ehring*, 900 F.2d 184 at 185-86. The *Ehring* Court rejected the notion that the value of the property received by the creditor through the foreclosure sale was the $390,000 for which the creditor subsequently sold the property. *See id*. at 188-89. Indeed, the *Ehring* Court held that "[i]f the creditor received 'more' [at the foreclosure sale than it would have in a chapter 7 liquidation] it is only because the creditor elected to purchase the property at the foreclosure sale rather than simply accepting the receipts of a sale to a third party." *Id*. at 188. The *Ehring* Court noted that it saw "no reason to construe section 547 to permit avoidance of an otherwise properly conducted sale based solely on the creditor being the highest bidder." *Id*. at 189; *see In re Wilson*, 2020 WL 5542444, at *4 (Bankr. D.D.C. Sept. 14, 2020) ("There would not be any preference if the Property had been bought [at a foreclosure sale] by someone else for a bid of $1.00 more. No preference should exist on the basis that [the secured creditor], by way of bidding on its claim, happened to turn out to be the highest bidder.").

17. Further, the *Ehring* Court found that the transfer arising from the foreclosure sale where the creditor received the property was a separate and distinct transfer from the creditor's subsequent sale to the third-party purchaser. *See id*. As such, the only transfer at issue when determining whether the debtor could avoid the foreclosure sale as a preference was the initial transfer in which the creditor purchased the property at the foreclosure sale. The subsequent sale of the property to the third-party purchaser was irrelevant as "section 547 does not reach a third-

party purchaser" [*id*. at 188], and the $390,000 value for which the property sold to the third-party purchaser was likewise inapplicable to the avoidable preference analysis.  *See id*.

18. Moreover, the *Ehring* Court reasoned that the exact same scenario could have developed in a chapter 7 liquidation, as "[t]here is nothing in [section 547] that prohibits the creditor from purchasing the property in a liquidation sale-just as at foreclosure.  In fact, section 547(b)(5) likely presumes a liquidation sale similar to the foreclosure sale forced by the mortgagee." *Id*.  As such, the creditor could not have received more in the foreclosure sale than it otherwise would have in a chapter 7 liquidation sale, and the foreclosure sale could not be avoided as a preferential transfer.

19. Here, like in *In re Ehring*, Wilmington purchased the Property at the Foreclosure Sale.  Although Wilmington has not resold the Property to a third-party purchaser, the value of the subject transfer to Wilmington is the amount Wilmington paid when it purchased the Property at the Foreclosure Sale ($69,100.00), not the amount for which Wilmington may resell the Property to a third-party purchaser or the amount Plaintiff predicts the Property could have sold to a third-party in a non-foreclosure sale ($192,000.00).  Accordingly, because Wilmington did not receive more from the Foreclosure Sale than it would have under a chapter 7 liquidation, Plaintiff's claim fails as a matter of law, and this Court should dismiss the Amended Complaint with prejudice.

### B. Plaintiff's Claim Fails as a Matter of Law because the Transfer Arising from the Foreclosure Sale was Not on Account of Antecedent Debt.

21. Because the transfer arising from the Foreclosure Sale was not on account of an antecedent debt, Plaintiff's claim fails as a matter of law.  To avoid the Foreclosure Sale as a preferential transfer, Plaintiff must show that the transfer was made on account of an antecedent debt.  *See* 11 U.S.C. § 547(b)(2).  Significantly, a creditor's purchase of a debtor's property in a foreclosure sale is not payment on an antecedent debt.  *See In re Wilson*, 2020 WL 5542444, at *1

(Bankr. D.D.C. Sept. 14, 2020); *In re Ehring*, 900 F.2d 184 at 188-19.  As stated above, the *Ehring* Court established that a foreclosure sale at which a creditor purchases its collateral and the creditor's subsequent resale of such collateral are separate legal events and should be treated as such.  *See In re Ehring*, 900 F.2d 184 at 188-89.  When a creditor purchases a property at a foreclosure sale it is acting as a "purchaser," not as a creditor.  *See id.*  "[A] transfer of a property to the holder of a perfected lien as the successful bidder at a regularly conducted foreclosure sale cannot be a preference: the transfer is to it as the purchaser, not in payment of its claim, and thus the transfer is not to it as *a creditor* on account of its antecedent claim as required by § 547(b)(2) for a preference to exist."  *In re Wilson*, 2020 WL 5542444, at *4 (emphasis in original; internal quotations omitted).

22.    Here, Wilmington received the Property at the Foreclosure Sale in its capacity as a purchaser, not a creditor.  Indeed, Wilmington paid value in the form of its credit bid in the amount of $69,100.00 [*see* Am. Compl. at Exhibit 1] in exchange for the Property.  Accordingly, Wilmington's receipt of the Property was not in payment of Plaintiff's debt to Wilmington; rather, Wilmington received the Property in exchange for its purchasing bid at the Foreclosure Sale.  *See In re Ehring*, 900 F.2d at 189 ("The creditor has no obligation to buy, let alone, bid at the [foreclosure] sale.").  Therefore, the transfer to Wilmington at the Foreclosure Sale was not on account of antecedent debt, and the Foreclosure Sale thus cannot be avoided as a preferential transfer.  As such, Plaintiff's claim fails as a matter of law, and this Court should dismiss the Amended Complaint with prejudice.

### C. Plaintiff Lacks Standing to Bring this Action.

23.    Because Plaintiff does not have standing to bring this action, her claim fails as a matter of law.  Plaintiff's Amended Complaint seeks to avoid the Foreclosure Sale as a preference.

*See* Am. Compl. Doc. No. 9. In bringing this Adversary Proceeding against Wilmington, Plaintiff exercised powers that are reserved for a chapter 13 trustee. *See In re Richardson*, 311 B.R. 302, 306 (Bankr. S.D. Fla. 2004) (Holding that "Chapter 13 debtors lack standing to utilize the avoidance and recovery powers of a trustee under section 544(b)" and dismissing count seeking to avoid a purportedly fraudulent transfer of the debtor's residence).

There is no statutory authority, or controlling caselaw, by which a chapter 13 debtor can exercise a trustee's avoidance powers. *See In re Thompson*, 2014 WL 3925277, at *2 (S.D. Ga. Aug. 11, 2014); *In re Richardson*, 311 B.R. 302, 304 (Bankr. S.D. Fla. 2004); *In re Holcombe*, 284 B.R. 141, 144-45 (Bankr. N.D. Ala. 2001) (Finding that "a Chapter 13 debtor lacks standing to assert the powers set forth in §§ 544 and 547 [based on] both a statutory construction analysis and … a controlling case law analysis); *In re Parker*, --- B.R. ---, 2021 WL 2315181, at *11 n.129 (Bankr. S.D. Fla. June 7, 2021) ("The Court does note, however, that if there was a basis to attach the sale, only a trustee - and not a chapter 13 debtor - could bring an action to avoid a transfer under Chapter 5 of the Bankruptcy Code."). Accordingly, chapter 13 debtors lack standing to bring avoidance actions, including the instant Adversary Proceeding seeking to avoid and vacate the Foreclosure Sale as a preferential transfer. Because Plaintiff lacks standing to bring the single claim alleged in the Amended Complaint, her claim fails as a matter of law, and this Court should dismiss the Amended Complaint.

## IV.   CONCLUSION

This Court should dismiss Plaintiff's Amended Complaint in its entirety and with prejudice for failure to state a claim upon which relief can be granted because (i) Wilmington did not receive greater value from the Foreclosure Sale than it would have otherwise received in a chapter 7

liquidation; (ii) the interest transferred to Wilmington in the Foreclosure Sale was not on account of Wilmington's antecedent debt; and (iii) Plaintiff does not have standing to bring this action.

WHEREFORE, Wilmington respectfully requests that this Court enter an order (i) granting this motion; (ii) dismissing Plaintiff's Amended Complaint in its entirety and with prejudice; and (iii) granting any and all further relief as is necessary and just.

Dated: July 12, 2021.                                   Respectfully Submitted,

/s/ Elizabeth R. Brusa
Elizabeth R. Brusa, Esq.
Fla. Bar No. 125655
**BRADLEY ARANT BOULT CUMMINGS LLP**
100 N. Tampa Street
Suite 2200
Tampa, FL 33602
Primary email: ebrusa@bradley.com
Secondary email: ddecker@bradley.com
T: (813) 559-5500 | F: (813) 229-5946
*Counsel for Wilmington Savings Fund Society dba Christiana Trust, not individually, but solely as Trustee for NYMT Loan Trust I*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on July 12, 2021, a true and correct copy of the foregoing has been furnished to all parties receiving CM/ECF notification via the Court's CM/ECF system and via U.S. Mail or electronic mail, as indicated, to the parties below:

*Via U.S. Mail*
Violeta Marina Nunez
14920 SW 82nd Lane
Bldg 12 Unit 205
Miami, FL 33193

*Via email*
Laila S. Gonzalez
Gianny Blanco
Freire & Gonzalez, P.A.
10691 N. Kendall Drive
Suite 207
Miami, FL 33176
courtdoc@fgbkc.com
laila@fgbkc.com
gianny@fgbkc.com

              */s/ Elizabeth R. Brusa*
              Attorney