*Tagged Opinion*



**ORDERED in the Southern District of Florida on November 10, 2021.**

**Laurel M. Isicoff**
**Chief United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

IN RE:

VIOLETA MARINA NUNEZ,

        Debtor.

_____

CASE NO.: 21-14815-LMI

Chapter 13

VIOLETA MARINA NUNEZ,

        Plaintiff,

v.

WILMINGTON SAVINGS FUND SOCIETY,

        Defendant.

_____/

ADV. PRO. NO.: 21-01157-LMI

## ORDER GRANTING WILMINGTON'S MOTION TO DISMISS
## <u>PLAINTIFF'S AMENDED COMPLAINT</u>

1

THIS CAUSE came on before the Court for hearing on August 30, 2021, at 2:30 p.m. (the "Hearing"), upon *Defendant Wilmington's Motion to Dismiss Plaintiff's Amended Complaint* (ECF #11) (the "Motion to Dismiss") filed by Defendant Wilmington Savings Fund Society dba Christiana Trust, not individually, but solely as Trustee for NYMT Loan Trust I ("Wilmington") and *Debtor Plaintiff's Memorandum Response to Defendant's Motion to Dismiss Plaintiff's Amended Complaint* (ECF #19) (the "Response") filed by Plaintiff Violeta Marina Nunez (the "Debtor"). The Court, having reviewed the Motion to Dismiss and the Response, having heard the arguments of the parties, and for the reasons stated herein, grants Wilmington's Motion to Dismiss.

## FACTS AND PROCEDURAL HISTORY

The facts are uncontested. On April 21, 2005, Debtor took out a loan (the "Loan") to purchase real property located at 14920 SW 82nd Lane, Miami, Florida 33193-3112 (the "Property"). Debtor defaulted under the Loan, and on August 25, 2020, Wilmington filed a complaint to foreclose the mortgage encumbering the Property in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "State Court"), initiating case number 2020-017983-CA-01 (the "Foreclosure Action").

On January 27, 2021, the State Court entered a final judgment of foreclosure against Debtor in the amount of $150,164.85 (the "Final Judgment"). The Property was sold pursuant to the Final Judgment on April 13, 2021 (the "Foreclosure Sale").  Wilmington was the successful bidder at the Foreclosure Sale with a credit bid of $69,100.00.  On April 27, 2021, a certificate of sale was filed in the Foreclosure Action.

On May 4, 2021, Debtor filed an objection to the Foreclosure Sale. After a hearing on May 18, 2021, the State Court entered an order on May 20, 2021, denying Debtor's objection and ordering the clerk to issue a certificate of title.

Also on May 18, 2021 (the "Petition Date"), Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code in this Court. On May 19, 2021, Debtor filed her *Complaint to Avoid a Preference Pursuant to 11 U.S.C. § 547(b) and Other Related Relief* (ECF #1) (the "Original Complaint"), initiating this adversary proceeding. Thereafter, on June 25, 2021, Debtor filed the *Amended Complaint to Avoid a Preference Pursuant to 11 U.S.C. § 547(b) and Other Related Relief* (ECF #9) (the "Amended Complaint"). In the Amended Complaint, Debtor asserts that the Foreclosure Sale should be vacated as a preferential transfer under section 547 of the Bankruptcy Code. Wilmington argues in its Motion to Dismiss that Debtor's Amended Complaint fails to state a claim upon which relief may be granted because (1) the Debtor does not have standing to bring this action; (2) Wilmington did not receive more from the Foreclosure Sale than it would have received in a chapter 7 liquidation; and (3) the interest transferred to Wilmington at the Foreclosure Sale was not on account of an antecedent debt.

For the reasons described more fully herein, the Court grants the Motion to Dismiss because the interest transferred to Wilmington at the Foreclosure Sale was not on account of antecedent debt. Because the shortfall in the Amended Complaint cannot be corrected, the dismissal is with prejudice.

## **LEGAL STANDARD**

The Motion to Dismiss was brought pursuant to Federal Rule of Civil Procedure 12(b)(6), as incorporated by Federal Rule of Bankruptcy Procedure

7012, based upon Debtor's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal citations omitted). To state a legally sufficient claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**Lack of Standing**

Wilmington argues in its Motion to Dismiss that the Debtor lacks standing to bring this action, which seeks to avoid and vacate the Foreclosure Sale as a preferential transfer. Standing is analyzed under a two-component framework, consisting of a constitutional requirement and prudential considerations. *See E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984-85 (11th Cir. 1990). To fulfill the constitutional requirement, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury

4

in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l., Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 125 (2014). To fulfill the prudential requirement the party must demonstrate that the party is asserting individual rights rather than third party rights, that the injury is peculiar to the litigant rather than a general grievance, and that the injury falls within the zone of interests protected by the law invoked. *See In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 250 (Bankr. N.D. Fla. 2003). This Court ruled, for the reasons stated on the record at the Hearing, that the Debtor has standing under 11 U.S.C. §1303 to prosecute this adversary proceeding.

## **The Preference Count**

In order to recover a preference under 11 U.S.C. §547(b)[1] a plaintiff must allege, and prove, that the transfers: 1) were of an interest of the debtor in property; 2) were on account of an antecedent debt; 3) were to or for the benefit of a creditor; 4) were made while the debtor was insolvent; 5) were made within ninety days prior to the commencement of this bankruptcy case; and 6) enabled [the defendant] to receive more than it would have received if the transfers had

---

[1] Section 547(b) of the Bankruptcy Code provides:

> the trustee may avoid any transfer of an interest of the debtor in property –
> (1) to and for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made … on or within ninety days before the date of the filing of the petition;
> …
> (5) that enables such creditor to receive more than such creditor would receive if
>     a. the case were a case under chapter 7 of this title;
>     b. the transfer had not been made; and
>     c. such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. §547(b).

not been made and it had asserted its claim in a chapter 7 liquidation. *See In re Aqua Clear Techs., Inc.*, 361 B.R. 567, 584 (Bankr. S.D. Fla. 2007).

The transfer alleged in the Amended Complaint is the Foreclosure Sale; the Amended Complaint asks that the transfer be avoided and that "the Foreclosure Sale be vacated."  The parties do not dispute that the Property was property of the Debtor at the time of the sale or that the transfer of the Property to Wilmington as the successful bidder at the Foreclosure Sale was made while the Debtor was insolvent and within ninety days before the Petition Date.  Thus, the remaining issues are whether the transfer was on account of an antecedent debt and whether Wilmington received more than Wilmington would have received "if the case were a case under chapter 7 of this title."

<u>The Transfer Was Not on Account of an Antecedent Debt</u>

The Debtor argues that the transfer of the Property to Wilmington as the successful purchaser of the Foreclosure Sale was on account of Wilmington's antecedent debt – that is, that the transfer was a consequence of Wilmington's status as a creditor.  The Debtor is not correct.

Some courts have held that a creditor's purchase of a debtor's property in a foreclosure sale is not a transfer on account of an antecedent debt.  *See In re Wilson*, 2020 WL 5542444, at *1 (Bankr. D.D.C. 2020); *In re Ehring*, 900 F.2d 184, 188-89 (9th Cir. 1990).  "[A] transfer of a property to the holder of a perfected lien as the successful bidder at a regularly conducted foreclosure sale cannot be a preference: the transfer is to it as the purchaser, not in payment of its claim, and thus the transfer is not to it as *a creditor* on account of its antecedent claim as required by § 547(b)(2) for a preference to exist."  *In re*

6

*Wilson*, 2020 WL 55542444, at *4 (emphasis in original; internal quotations omitted).  Other courts have held that a creditor's purchase of a debtor's property at a foreclosure sale is on account of an antecedent debt when the creditor obtained the property through a full credit bid. *See In re Villarreal*, 413 B.R. 633, 638 (Bankr. S.D. Tex. 2009); *Whittle Dev. Inc. v. Branch Banking & Trust Co.,* 463 B.R. 796, 802–03 (Bankr. N.D. Tex. 2011) ("[I]f a creditor executes on secured property and obtains the property for what is found to be less than what it would have garnered in a hypothetical liquidation, then the transfer may be avoided under the plain meaning of section 547(b)."). When a foreclosure sale occurs there are two transfers.  The first transfer is a transfer of the foreclosed property to the successful bidder at the sale. In Florida, this is a two-part process –  a certificate of sale is issued "promptly" following the foreclosure sale. Fla. Stat. §45.031(4).

If there is no timely challenge to the sale[2], or the challenge has been resolved against the challenger, the certificate of title is issued. *See* Fla. Stat. §45.031(5); Fla. Stat. §45.031(6).  At the time of the foreclosure sale, the winning bidder pays (or electronically advances[3]) funds to the court for the purchase of the property.  *See* Fla. Stat. §45.031(3).  Once the certificate of title is issued, then the proceeds of sale are distributed to the foreclosing lienholder (less any sale costs) and, if applicable, any subordinate lienholders, capped at the full

---

[2] Under Florida law, the foreclosure sale is deemed complete at the time the certificate of sale is filed, and the sale can generally only be vacated upon an objection to the sale that is filed within 10 days after the certificate of sale is filed.  *See* Fla. Stat. §45.0315 (providing that the right of redemption ends at the time the certificate of sale is filed); *see also In re Jaar*, 186 B.R. 148, 153-54 (Bankr. M.D. Fla. 1995) (providing that the filing of the certificate of sale is the deadline after which a debtor cannot cure defaults or reinstate a mortgage under chapter 13 of the Bankruptcy Code).

[3] *See* Fla. Stat. §45.031(10).

7

amount of the judgment debt. *See* Fla. Stat. §45.031(7)(a). This payment to the foreclosing party is the second transfer.

If a successful third-party bidder pays cash at a foreclosure sale, these sale proceeds are disbursed to the foreclosing lienholder as payment on the final judgment of foreclosure. Any lienholder can participate as a bidder at a foreclosure sale. The lienholder can place a cash bid during a foreclosure sale. However, to avoid the obvious inefficiencies of requiring a foreclosing lienholder to advance cash that it will just receive back after the sale, Florida law permits mortgagees to credit bid at foreclosure sales. "Credit bidding is a judicially created right granted to the first mortgagee upon foreclosure of the mortgage." *Branch Banking & Tr. Co. v. Tomblin*, 163 So. 3d 1229, 1230 (Fla. 5th DCA 2015). This is a longstanding right, as described by the Florida Supreme Court in *Grable v. Nunez*, 66 So. 2d 675, 677 (Fla. 1953) ("This Court has long recognized the principle that no useful purpose could be served in requiring a bondholder or a mortgagor to pay cash to a court officer conducting a judicial sale when he would be entitled to immediately have it paid back to him under the decree authorizing the sale."). In sum, the transfer of property at a foreclosure sale is in consideration of payment of the bid amount. The transfer to a lender on account of its antecedent debt is the payment of the bid proceeds up to the judgment amount.

In this case, the right that Wilmington had as a creditor was the right to use a credit bid, rather than pay cash, when purchasing the Property at the Foreclosure Sale. The exercise of the right to credit bid was in lieu of a transfer *by* Wilmington to the Clerk of Court for ultimate transfer *back* to Wilmington to

8

pay the Final Judgment.  In other words, the transfer to Wilmington on account of the antecedent debt was the transfer of the sale proceeds (had there been sale proceeds) to Wilmington.  The issuance of the certificate of sale to Wilmington was *not* on account of the antecedent debt, but rather on account of Wilmington's payment of the purchase price, which, in this case, was done by the credit bid.

Wilmington received the Property as a result of the Foreclosure Sale in its capacity as a purchaser, not a creditor.  *See In re Wilson*, 2020 WL 5542444, at *4 ("There would not be any preference if the Property had been bought [at a foreclosure sale] by someone else for a bid of $1.00 or more.  No preference should exist on the basis that [the secured creditor], by way of bidding on its claim, happened to turn out to be the highest bidder.").  Because the transfer of the Property to Wilmington at the Foreclosure Sale was not on account of Wilmington's antecedent debt, the Foreclosure Sale cannot be avoided as a preferential transfer.

The Chapter 7 Test

Because the Court holds that the transfer to Wilmington was not made "on account of an antecedent debt", the Court does not need to reach the issue of whether Wilmington received more, when it "received" the Property at the Foreclosure Sale, than it otherwise would have received in a chapter 7 liquidation.[4]

---

[4] At the Hearing, the Court announced that it adopts the reasoning and conclusions of *In re Villarreal*, 413 B.R. 633 (Bankr. S.D. Tex. 2009), agreeing with that court that *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 545 (1994) does not apply to preference actions under 11 U.S.C. §547.  However, under Florida law, which is applicable to the Foreclosure Sale, "[t]he amount of the bid for the property at the sale shall be conclusively presumed to be sufficient consideration for the sale." Fla. Stat. §45.031(8).  Thus, if this element of 547 was dispositive, the Motion to Dismiss would nonetheless be granted.

## **CONCLUSION**

Based on the foregoing, it is hereby ORDERED and ADJUDGED that:

1.        The Motion to Dismiss is **GRANTED**.

2.        Because, as a matter of law, Debtor cannot assert any conceivable set of facts that would support a claim under section 547 of the Bankruptcy Code against Wilmington to vacate the Foreclosure Sale as a preference, the Amended Complaint is dismissed with prejudice.

###

Copy to:
Elizabeth R. Brusa, Esq.
Laila S. Gonzalez, Esq.

*Attorney Brusa is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*